UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
, URBANA DIVISION,

Jonathon Meskauskas,      )   Case No.
            Plaintiff,    )
                          )
                          )
        Vs.               )
                          )
Cheryl Hansen, John R.    )
Baldwin, Wexford Health Sources )
, Patricia Rice, Bruce A. Aagre )
Terri Kennedy, Lt. T. Bantista, )
Jane Doe nexe "sherry", Jane )
Doe "kelly Lashawn" Health care )
unit administrator          )

## COMPLAINT

42 U.S.C § 1983

### I. Federal Jurisdiction

Jurisdiction is based on 28 U.S.C §1331
and 28 U.S.C §1367

### II. PARTIES

A. Plaintiff:

Jonathon Meskauskas   Prison Id# R-44760
Pontiac Corr. Ctr   Po Box 99
700 West Lincoln Street
Pontiac, IL 61764

1 of 23

B. Defendants
   Defendant #1
Full Name: Cheryl Hansen
Current Job title: Licensed Nurse practioner
Current work address: Pontiac Corr. Ctr.
                      700 west Lincoln Street
                      Pontiac, IL 61764


Defendant #2
Full name: John R. Baldwin
Job title: Acting Director of Illinois Department
           of corrections
Work address: Illinois Department of corrections (IDOC)
              1301 Concordia Court P.O. Box 19277
              Springfield, IL 62794-9277


Defendant #3
Full name: Wexford Health Sources Inc.
Job title: Health care provider for I.D.O.C
Work address: Foster Plaza 2
              425 Holiday Drive
              Pittsburgh PA 15220

2 of 23

Defendant # 4;

NAME: PATRICIA Rice

Job title: Nurse practioner

Work address: Pontiac Corr. ctr.
700 West Lincoln Street
Pontiac, IL 61764


Defendant # 5;

NAME: JANE DOE "Kelly Lashawn"

Job title: Health care unit Administrator

Work address: Pontiac Corr. Ctr.
700 West Lincoln Street
Pontiac, IL 61764


Defendant # 6

NAME: Bruce A. Angre

Job title: Grievance officer

Work address: Pontiac corr ctr.
700 West Lincoln Street
Pontiac, IL 61764


3 of 23

Defendant #7
  Name    Terri Kennedy
Job title :    Warden Pontiac Corr. Ctr.
Work address :  Pontiac Corr, Ctr
            700 West Lincoln Street
            Pontiac, IL 61764


Defendant #8
  Name:    T.   Bautista
Job title :    Lieutenant
Work address:    Pontiac Corr. Ctr,
            700 West Lincoln Street
            Pontiac IL 61764


Defendant #9
  Name    Jane Doe "sherry"
Job title :    Nurse
Work address    Pontiac Corr. Ctr.
            700 West Lincoln street
            Pontiac IL 61764



4 of 23

III Exhaustion of Administrative Remedies

A. Is there a grievance procedure available at your institution?   Yes ✓

B. Have you filed a grievance concerning the facts to this complaint?   Yes ✓

C. Is the grievance process completed?   yes

## IV Statement of Claim

1. The following events occurred at Pontiac Correctional Center in Pontiac, Illinois.

2. On June 17, 2018 at approximately three in the morning Plaintiff had a seizure. This was the first time in his life he ever had a seizure.

3. Plaintiff submitted several sick call requests and was finally seen by Nurse Misty or tracy (Jane Doe) on June 27, 2018 for both seizures and refill of Plaintiff prescription for "Pain" medication called keppra, which had expired on June 15, 2018. The nurse told me for the first time that keppra was in fact a seizure medication.

4. On June 30, 2018, Plaintiff saw Docter Vipin Shah who confirmed that keppra was in fact a seizure medication and Plaintiff was not supposed to stop taking keppra abruptly, but rather it should have been tapered off because abruptly discontinuing keppra can cause seizures. He also told Plaintiff that the medications abilify and remeron could excaberate a seizure disorder.

5. This was the first time Plaintiff was told that the medication keppra was a seizure medication, and that it altered brain chemistry to the point that it can cause seizures when abruptly discontinued. Dr. Shah told Plaintiff that he did not know if the seizures would ever stop and that Plaintiff would probably have to take keppra or some seizure medication for the rest of his life. Since then Plaintiff has been on the chronic care clinic for seizures and have been taking keppra for a seizure disorder.

6. Plaintiff was originally diagnosed with Sciatica in menard Corr. Ctr. In late November 2017 Plaintiff transferred to Pontiac Corr. Ctr. Plaintiff complained of sciatica related pain which was excaberated by the long bus ride to Pontiac in which Plaintiff was in handcuffs and shackles all day. Plaintiff was instructed to put a sick call request in.

6 of 23

7. On November 17, 2017 in response to Plaintiff's sick call request he saw a nurse. Plaintiff explained the pain, diagnosis of sciatica, and previous history of medication he was given. She scheduled Plaintiff to see the "doctor."

8. On November 20, 2017 Plaintiff saw Cheryl Hansen LNP. After I informed MS Hansen of the shooting pain due to sciatica she, among other things, prescribed a medication called Keppra 500mg twice daily.

9. Despite the fact that Plaintiff went to MS Hansen for treatment of nerve pain, MS. Hansen never informed him that she was giving him a seizure medication that could alter the chemistry of her brain and cause seizures. Had Plaintiff been informed that she was treating him with a seizure medication "off-label" for nerve pain he would have refused to take such medication. Plaintiff was led to believe that Keppra was a pain medication by MS. Hansen.

10. Furthermore, MS Hansen, despite knowing that the abrupt discontinuing of seizure medication such as Keppra could cause seizures never ordered that the medication be tapered off or that Plaintiff be monitored for possible occurrences of seizures. She just ordered it be abruptly discontinued in three months.

7 of 23

11. MS. Hansen renewed the keppra for another Three months without Plaintiff ever being physically before her after a nurse told her it expired. Again she did not inform Plaintiff that it was a seizure medication, the side effects, nor did she order that it be tapered off or that Plaintiff be monitored for possible occurrences of serevers. MS. Hansen just ordered it be abruptly discontinued in Three months. Plaintiff was again left in the dark that he was taking a seizure medication that could alter his brain chemistry.

12. At approximately 10:00 p.m on June 15, 2018 The keppra was abruptly discontinued as ordered by MS. Hansen. By the early morning hours around Three Am on June 17, 2018 Plaintiff had a seizure. Plaintiff awoke on the ground of his cell. His muscles were tense and he had urinated on himself. In truth Plaintiff did not understand what had happened as it was the first time ever having a seizure in his life. Plaintiff experienced short losses of consciousness type spells throughout the following days, which were later explained as seizures as well, until Docter Shah prescribed keppra again and put Plaintiff on the chronic clinic for seizures.

8 of 23

13. Furthermore, the Illinois Department of Corrections (IDOC) acting director John R. Baldwin and Wexford Health Services, I.D.O.C's medical provider, have embraced either a policy, practice, or custom of not ensuring that health care employees inform inmates of the potential side effects of prescribed medications. Cheryl Hansen never informed Plaintiff that she was using a medication for seizures off-label to treat nerve pain. And Amy Adams and Dr. Bednarz prescribed Remeron and Abilify without informing Plaintiff of the seizure consequences. Doctor Kilwan Ojelade prescribed Amlodipine and Hydro chlorothiazide (for blood pressure) without ever telling Plaintiff he was doing so or what side effects may occur. The medication just showed up with a male nurse Chris. This supports the fact that there is a policy, practice or custom that F.D.O.C and Wexford either implement or allow to exist.

14. When Plaintiff filed the grievance about the fact that Plaintiff, and other FDOC inmates, were not being informed about side effects of medication or that medication for seizures was being given without any warning, the response concurred with by John R. Baldwin was: "All medical treatment must be ordered by FDOC physicians and not a matter of inmate preference."

9 of 23

15. That statement stands in stark contrast to informed consent rights of patients and substantive due process principles and the eighth amendment to the US. Constitution.

16. On October 31, 2018 Plaintiff saw Patricia Rice for sciatica pain and degenerative disc disease pain. Plaintiff had previously been told by the nurse at sick call that the only thing they would do for sciatica was increase keppra. Plaintiff explained to Ms. Rice that he was on the seizure clinic because of keppra causing seizures when abruptly discontinued and that he had another seizure clinic in February. Plaintiff was worried that she would prescribe keppra for a short period of time and it would be abruptly discontinued before seizure clinic. She waived Plaintiff off saying that she was aware that abruptly stopping keppra can cause seizures. Yet, Plaintiff later found out she did nothing to assure that the keppra was either tapered off gradually when she increased the dosage in order to manage sciatica pain. Nor did she make sure that Plaintiff received keppra until his next seizure clinic. She even over rid the seizure clinic doctors prescription that would have ensured Plaintiff received 500 mg's of keppra until march and therefore never

10 of 23

had to experience the discontinuation and suffer seizures.

17. Plaintiff explained that the treppin seemed to only at most dull the nerve pain but did not relieve the pain completely. She said she was increasing treppin and for the degenerative disc disease said trama... (?) would work. (Plaintiff later found out she was referring to tramadol) But IDOC and Wexford told staff to stop prescribing it. Plaintiff told her that in the past he'd taken naprotin, Robaxin and cymbalta and none of them really worked.

18. Plaintiff said he was on the hypertension clinic and all the doctors told him to jog inorder to help get his blood pressure down, but the jogging was aggravating the sciatica and degenerative disc disease pain. Ms. Rice told Plaintiff to stop jogging. Plaintiff told her every other doctor he saw before her told him he needed to jog.

19. Ms. Rice became irritated and said Plaintiff wasn't getting tramadol. Plaintiff said he didn't ask for that and she said, "Well, I have to give you something otherwise you'll sue me, so I'm giving you NSAIDs."

11 of 23

20. Plaintiff asked to see a specialist and or order new x-rays as he'd had the pain since 2017 and it was only getting worse. Ms. Rice laughed and replied, "It costs too much money for all that."

21 On November 7, 2018 Plaintiff received to his surprise Naproxen. The exact same medication Plaintiff told Ms. Rice that did not work in the past. He took the medication hoping for pain relief but got none whatsoever. Ms. Rice prescribed Naproxen and not a medication she knew would work (Tramadol) and gave Plaintiff "something" just to cover her tracks in Court if she was sued.

22. Furthermore, Plaintiff is being completely denied treatment for his sciatica and degenerative disc disease as his sick call requests have been ignored. Not only has Plaintiff given multiple sick call requests to the CMT. But on February 7, 2019, February 12, 2019 and February 26, 2019 Plaintiff mailed yellow medical requests to the Health Care Unit administrator.

23. On March 11, 2019 while Plaintiff was in the healthcare unit for a Dental pass he complained about the pain and the fact that he was being ignored by the doctors to another inmate, Carl Sturdivant, Mr. Sturdivant told Plaintiff to tell Kelly and said she was the health care unit administrator. Plaintiff spoke to Kelly Loshawan (?) (Jane Doe as I don't know her full name) And explained that he was in extreme pain, had been diagnosed with Sciatica and degenerative disc disease, and the sick call requests were being ignored. She took Plaintiff's name and information and assured him that she would make sure he was on the nurse sick call the next day. However, Plaintiff was never put on the sick call list.

24. Plaintiff submitted two grievances, and detailed the circular run around Plaintiff was given in that he'd file a grievance complaining that the sick call requests he put in were being ignored, only to be told by the grievance officer, Bruce A. Boyne and Warden Terri Kennedy, to submit sick call requests again! The Grievance officer and Terri Kennedy were indifferent to Plaintiff's serious medical need as they were made aware that his sick call requests were being ignored yet instead of simply telling the nurse to schedule the Plaintiff for sick call they told Plaintiff to submit

13 of 23

further requests that would in turn be ignored.

25. On January 31, 2019 keppra was abruptly discontinued as Defendant Patricia Rice failed to ensure Plaintiff received it until his next seizure clinic.

26. When Plaintiff was told by the medtechs that it would expire, he sent sick call requests on January 24, 2019 Thursday night nurse Chris, January 25th female medtech long reddish blond hair, January 26, 2019 Saturday nurse Cora. And on January 27, 2019 Plaintiff submitted an emergency grievance which was ignored. The health care administrator or whoever is responsible for processing the sick call requests failed to schedule Plaintiff to renew the keppra medication.

27. On February 1, 2019 at approximately 11:00 A.m Plaintiff had a seizure. The inmate gallery worker Carl Blackshear told Plaintiff later that he alerted the officers after seeing Plaintiff on the ground in convulsions. Plaintiff regained consciousness with C/o Priest, C/o Davis, and C/o Page and eventually Lt. Bantisha standing at his cell door. The door was open, Plaintiff was on the ground, Plaintiff had urinated on himself and according to C/o Priest Plaintiff's face was red/swollen,

14 of 23

28. Plaintiff showed all the officers and Lieutenant a medical permit verifying that he had seizures. Plaintiff was escorted downstairs to the south house door and left sitting on the stairs. Plaintiff informed Lieutenant Bautista that he had seizures in the past when keppra was abruptly stopped and that without the medication Plaintiff could suffer another seizure. Plaintiff waited on the stairs and Lieutenant Bautista came back and said he spoke to nurse Sherry (?) and that she would bring medication to the cellhouse. Plaintiff asked Lieutenant Bautista to take him to the health care unit so he could see a doctor to prescribe keppra as the prescription had ran out. Rather than taking Plaintiff to the health care unit to evaluate Plaintiff's injuries and insure that he received the seizure medication Lieutenant Bautista sent Plaintiff back to his cell with instructions to lay down and go to sleep.

29. Plaintiff exhausted from the seizure managed to fall asleep. He awoke around 9:00 p.m. and no nurse, doctor or med tech had arrived. Plaintiff was locked in his cell and all he could do was ask c/o's Page and Duvall to ask Lieutenant Bautista what was going on with the nurse and medtech.

They each told Plaintiff. Lieutenant Bartoshe said he was familiar with the issue and the nurse is coming.

30. No one came and Lieutenant Bartoshe ended her shift leaving Plaintiff in the cell with no medication or treatment for her serious medical needs.

31. Plaintiff suffered another seizure at approximately 2:45pm on February 1, 2019, but no officer was around to witness the seizure. As a result of the seizure Plaintiff again urinated on himself and the whole side of his face was swollen, red/bruised. Plaintiff was in pain and had a headache.

32. When the 3-11 gallery officer (John Doe) passed by her count, Plaintiff handed him a letter for the Lieutenant OQuendo informing him of the two seizures, the lack of treatment, etc.

33. At approximately 4 or 5 pm on February 1, 2019 Plaintiff suffered another seizure witnessed by the officer in the tower. Plaintiff regained consciousness with Sergeant Dillon's knee on her back essentially stabilizing him while he was laying on the ground in urine and this time Plaintiff also defecated on himself.

1b of 23

34. Plaintiff was taken to the shower to clean himself. He later discovered that her tooth was chipped and he had a series of bumps and bruises on her forehead and along the right side of her face.

35. Those two seizures and injuries could have been prevented had Lt. Bautista and/or nurse Sherry insured that Plaintiff received treatment for her serious medical need.

36. Lieutenant O'Quendo spoke to Plaintiff at her cell. Plaintiff showed him a medical permit verifying that he did have seizures. Lieutenant O'Quendo told Plaintiff that Lieutenant Bautista did not tell him anything about the seizure on the 7-3 shift, when he relieved Lieutenant Bautista. Lieutenant O'Quendo stated he called the health care unit himself and they would bring medication to Plaintiff.

37. At around 9 p.m. the nurse Chris brought Plaintiff keppra. Chris told Plaintiff that no nurse from 7-3 shift informed them that Plaintiff had a seizure earlier. So either Lieutenant Bautista lied and never called the health care unit or the nurse at health care "Sherry" (or whomever that Bautista called just ignored Plaintiff's plight all together.

38. Chris also said that there was plenty of keppra in stock and the med techs would make sure Plaintiff received keppra. Plaintiff took the keppra and went to sleep. The med tech at 7:00 am brought another dose of keppra. On ~~Saturday~~ February 2, 2019, Saturday, Plaintiff informed Lieutenant Bautista that he still had not seen a doctor and without an actual prescription for keppra Plaintiff was essentially at the medtechs mercy because they were not obligated to give Plaintiff keppra without a prescription. Plaintiff also told Lieutenant Bautista that his injuries were still not documented or evaluated. He told Plaintiff that he'd make sure Plaintiff saw the nurse.

39. Nurse Jade came to Plaintiff's cell shortly thereafter. Upon seeing the bruises on Plaintiff's face she said that he had to go to the health care unit to evaluate the injuries. It was Saturday and there was no doctor on site. However, nurse Megan Wilty was in the health care unit.

18 of 23

40. Plaintiff began to explain to her what happened with the keppra expiring and she told Plaintiff she reviewed her files and saw what happened. She stated, what every one seems to know, keppra like other seizure medications can cause seizures if abruptly stopped. Nurse Wilky even added that it could cause seizures in people who never had seizures before. Nurse Wilky got on the phone in front of Plaintiff and spoke to Dr. Tilden. She informed him that Plaintiff's seizure medication was abruptly stopped and he refilled it for six months. A simple phone call and the problem was resolved. Nurse Wilky put me in for a Dental referral and scheduled the seizure clinic for Tuesday.

41. The Dentist subsequently filled in the part of Plaintiff's tooth that was chipped.

42. In addition to the physical issues since suffering the seizure disorder Plaintiff has been suffering panic attacks and anxiety fearing to sleep in his bunk and have a seizure at night. So he can only sleep on the floor. And Plaintiff has been given a lay-in permit to eat meals in his cell because of panic attacks in the dining room or on the way to the dining room

19 of 23

## THE DEFENDANTS

43. Each Defendant is being sued in her or her individual and official capacity. Each Defendant acted under color of state law.

44. Defendant Cheryl Hansen, has violated Plaintiff's eighth Amendment right, applicable by the fourteenth amendment to the U.S Constitution, as she has been deliberately indifferent to Plaintiff's serious medical needs as outlined in the above paragraphs 1-12

45. Defendant Cheryl Hansen has violated Plaintiff's fourteenth Amendment right to substantive due process in that she deprived Plaintiff of necessary information as was necessary for Plaintiff to make an informed decision to accept or reject proposed treatment as outlined in the above paragraphs 1-13

46. Defendant Cheryl Hansen violated state law informed consent doctrine as outlined in the above paragraph 1-13 This court has supplemental jurisdiction over such claim.

20 of 23

47. Defendants John R. Baldwin as acting director of the Illinois Department of Corrections and Defendant Wexford Health Sources have embraced a policy, custom, or practice of not ensuring that the health care employees inform inmates of the potential side effects of prescribed medication is violation of Plaintiff's fourteenth Amendment right to substantive due process as to make an informed decision to accept or reject proposed treatment as outlined in the above paragraphs 1-15.

48. Defendant Patricia Rice has violated Plaintiff's eighth Amendment right, Applicable by the fourteenth Amendment, to the U.S. Constitution as she has been deliberately indifferent to Plaintiff's serious medical needs as outlined in paragraphs 16-21, 25, 27-42.

49. Defendant Jane Doe "Kelly Lashewan" Health Care administrator has violated Plaintiff's eighth Amendment right, applicable by the fourteenth amendment to the U.S. Constitution, as she has been deliberately indifferent to Plaintiff's serious medical needs as outlined in paragraphs 22, 23, 26

21 of 23

50. Defendant Bruce A. Aagre grievance officer and Warden Terri Kennedy have violated Plaintiff eighth amendment right, applicable by the fourteenth Amendment to the U.S. Constitution, In that they have been deliberately indifferent to Plaintiff's serious medical needs as outlined in paragraph 24.

51. Defendants Lieutenant J. Bautista and Jane Doe "nurse sherry" have violated Plaintiffs eighth Amendment in that they have been deliberately indifferent to Plaintiffs serious medical needs as outlined in paragraph 27-42

## V. Relief Requested

52 Plaintiff is seeking nominal, compensatory and punitive damages from each defendant for physical, actual, and mental or emotional injury. Plaintiff wishes the amount to be determined by a jury.

53 Plaintiff is also seeking declaratory relief stating he has a right to be informed when being prescribed medicine or label that alters the brain chemistry and can produce harmful side effects, i.e, cause a seizure disorder.

22 of 23

54. Plaintiff is seeking injunctive relief:

(1) ordering the Defendants to treat his sciatic nerve and degenerative disc pain

(2) ordering defendants to inform Plaintiff of side effects of all medication prescribed

(3) ordering defendants to follow manufacturer's recommendations and not abruptly discontinue seizure medication.

VI The Plaintiff does demand that the case be tried by a jury.

Certification

By signing the complaint I certify that the facts stated in this complaint are true to the best of my knowledge and belief. I understand that if the certification is not correct, I may be subject to sanctions by the court.

Dated January 2, 2020
Signed:
Jonathon Meskauskas
R44760
PO Box 99  700 west Lincoln st
Pontiac IL 61764

23 of ~~22~~ 23