UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

JONATHAN MESKAUSKAS      )
                         )
            Plaintiff,   )
                         )
v.                       )    No.: 20-cv-1023-JBM
                         )
CHERYL HANSEN, et al.,   )
                         )
            Defendants. )

**MERIT REVIEW ORDER**

  Plaintiff, proceeding *pro se,* files an action under 42 U.S.C. § 1983 alleging Eighth Amendment deliberate indifference to his serious medical needs and Fourteenth Amendment failure to obtain informed consent at the Pontiac Correctional Center ("Pontiac"). The case is before the Court for a merit review pursuant to 28 U.S.C. § 1915A. In reviewing the Complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour,* 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States,* 721 F.3d 418, 422 (7th Cir. 2013)(citation and internal quotation marks omitted). While the pleading standard does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 Fed. Appx. 588, 589 (7th Cir. 2011) quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

**ALLEGATIONS**

  On November 20, 2017, Plaintiff was seen by Defendant Nurse Practitioner Cheryl Hansen for treatment of his pre-existing sciatica. Defendant Hansen prescribed Keppra 500 mg

twice daily which Plaintiff believed was a pain medication. Plaintiff continued on the Keppra until June 15, 2018 when Defendant Hansen suddenly discontinued it.

On June 17, 2018, Plaintiff experienced a first-time seizure. On June 27, 2018, Plaintiff was seen by a nurse named Misty or Tracy who told Plaintiff that Keppra was a seizure medication. Plaintiff alleges that Defendant Hanson did not inform him of this and was using Keppra off-label to treat his sciatic pain.

On June 30, 2018, Plaintiff was seen by Doctor Shah, who confirmed that Keppra was a seizure medicine. He also informed Plaintiff that patients are to be weaned off of Keppra, as abruptly discontinuing the medication can cause seizures. Doctor Shah did not know whether the seizures would continue and recommended that Plaintiff be maintained on Keppra or other seizure medicine for the rest of his life.

Plaintiff alleges that on October 31, 2018, Defendant Rice, status unknown, increased the Keppra dosage for his sciatic pain even though Plaintiff had requested Tramadol. Defendant Rice subsequently ordered Naprosyn for pain relief despite Plaintiff's claim that Naprosyn had previously proved ineffective. When Plaintiff asked to undergo x-rays and to be seen by a specialist, Defendant Rice refused, claiming it cost too much money.

Plaintiff claims that he submitted sick call requests on February 7, 2019, February 12, 2019 and February 26, 2019, but was not scheduled to be seen. On March 11, 2019, Plaintiff complained to Kelly LaShawn, the healthcare unit administrator. She assured him that he would be placed on nursing sick call the following day, but this was not done. Plaintiff grieved the lack of response to his sick call requests. Grievance Officer Defendant Aagre and Warden Teri Kennedy advised him to resubmit the sick call slips.

On an unidentified date, Plaintiff was notified by medical technicians that the Keppra prescription would soon run out. Plaintiff complains that Defendant Rice failed to prescribe a sufficient course of Keppra to last until the next seizure clinic appointment where it was to be renewed. Plaintiff submitted a sick call request to Nurse Chris on January 24, 2019 so he could be seen for the prescription renewal. He submitted another request on January 25, 2019, to a female medical technician ("CMT") with long reddish-blonde hair, and another, on January 26, 2019 to Nurse Corn. It appears that these requests were not answered. On January 27, 2019, Plaintiff submitted an emergency grievance which was denied by "the health care administrator or whoever is responsible for processing the sick call requests…"

On February 1, 2019, Plaintiff suffered a seizure. When he awoke, several officers had responded to his cell with Defendant Lt. Bautista arriving some time thereafter. For unexplained reasons, Plaintiff was taken to a staircase and seated there rather than being taken to the healthcare unit. Plaintiff told Defendant. Bautista of his recent history of seizures and indicated that he had not been receiving the Keppra. Defendant Bautista left and returned, saying that he had spoken with Nurse Sherry who would bring the medication to the cell house. Plaintiff asked to be seen by a physician so the prescription could be immediately renewed, and so he could be evaluated for any injuries suffered in the seizure. Defendant Bautista refused, sending Plaintiff back to his cell.

When Plaintiff was returned to his cell, help was not forthcoming. He asked officers Page and Davis, not parties, to check with Defendant Bautista. They apparently did so, informing Plaintiff that the nurse was coming to see him. At 2:45 p.m., still without having seen a nurse, Plaintiff suffered a second seizure. At 4:00 or 5:00 p.m. he suffered a third seizure, still not having been or provided his seizure medication. Sergeant Dillon responded and, as Plaintiff

had urinated and defecated on himself, had Plaintiff taken to the showers. There, Plaintiff noted bumps and bruises on his forehead and the right side of his face.

Lt. Oquedo, not a party, later responded to Plaintiff's cell, indicating that Defendant Bautista had failed to report that Plaintiff had had a seizure earlier that day. Lt. Oquedo called for a nurse and at 9:00 p.m., Nurse Chris arrived with the Keppra. She informed Plaintiff that no one had advised nursing staff that Plaintiff had suffered a seizure. As there is a conflict as to whether Defendant Bautista had told Nurse Sherry of the event, Plaintiff names both individuals.

Plaintiff was taken to the healthcare unit the following day. There, Nurse Wilky contacted Doctor Tilden who renewed Plaintiff's Keppra for six months. Nurse Wilky also scheduled Plaintiff for dental clinic as he had chipped his teeth during one of the seizures.

Plaintiff alleges that he has suffered panic attacks due to the poorly controlled seizures and now eats meals in his cell. Plaintiff asserts that all Defendants were deliberately indifferent to him. He also alleges that Defendant Hansen violated his rights to substantive due process when she did not provide him sufficient information about the Keppra so as to obtain his informed consent prior to prescribing it.

Plaintiff alleges that John Baldwin, former Director of the Illinois Department of Corrections ("IDOC") and Wexford Health Sources had a policy or practice under which health care workers prescribed medications without discussing the potential side effects with their patients. In support, Plaintiff alleges that Amy Adams (position unknown) and Doctor Bednarz prescribed him Remeron and Abilify without informing him of the medications' potential side effects. He indicates, further, that Doctor Ojelade prescribed Amlodipine and hydrochlorothiazide without telling Plaintiff, and without informing him of their potential side effects.

4

Plaintiff alleges that he has experienced subsequent seizures and is now on the chronic seizure clinic. He requests compensatory and punitive damages as well as injunctive relief, that his Keppra prescription not be allowed to expire, and that medical staff be ordered to informed inmates of the potential side effects of drugs they are prescribing. Plaintiff also requests treatment for his sciatic nerve pain.

## ANALYSIS

Defendants violate the Eighth Amendment where they are deliberately indifferent to a prisoner's serious medical needs. *Snipes v DeTella*, 95 F.3d 586, 590 (7th Cir. 1996). Here, Plaintiff states a colorable claim that Defendants Hansen, Rice, LaShawn, Bautista, and Nurses Sherry, Chris and Corn were deliberately indifferent to his serious medical needs as related to the Keppra medication. He states the additional claim that Defendants Hansen and Rice were deliberately indifferent as related to his sciatica. Nurses Chris and Corn will be added as Defendants as will the Jane Doe CMT. Plaintiff is on notice that it will be his responsibility through disclosures and discovery to identify the CMT who saw him on January 25, 2019.

Plaintiff also alleges that Defendants IDOC Director Baldwin and Wexford Health Sources allowed a policy or practice whereby health care workers were not required to discuss with their patients the potential side effects of the medications they prescribed. Director Baldwin and Wexford have potential *Monell* liability if their official policy or practice caused a constitutional injury.[1] *Iskander v. Village of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982) (applying *Monell* liability to private corporations performing governmental functions); *Teesdale v. City of Chicago,* 690 F.3d 829, 834 (7th Cir. 2012) (applying *Monell* liability to officials with "final decisionmaking authority."

---

[1] *Monell v. New York City Department of Social Services*, 436 U.S. 658, 691-92 (1978) (municipality liable will attach where constitutional injury resulted from a municipality's policy or practice).

5

"The Complaint must provide enough facts, if proven to be true, to support an inference that the implicit policy was so widely followed as to represent an official policy for which the [defendant] is liable." *Hare v. County of Kane*, No. 14-1851, 2014 WL 7213198, at *3 (N.D. Ill. Dec. 15, 2014). The practice must have been "so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision." Id. at *3. "There is no clear consensus as to how frequently [certain conduct] must occur to impose *Monell* liability, except that it must be more than one instance, or even three." *Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2006) (internal citations omitted). Here, Plaintiff fails to identify sufficient facts to establish that staff's failure to advise him of drug side effects was so pervasive it constituted a recognized policy for which Director Baldwin or Wexford would be liable.

As to the substantive due process claim asserted against Defendant Hansen, the Seventh Circuit has recently recognized, in a case of "apparent first impression":

> prisoners have a Fourteenth Amendment right to informed consent. The right to refuse medical treatment carries with it an implied right to the information necessary to make an informed decision about whether to refuse the treatment. Without crucial information about the risks and benefits of a procedure, the right to refuse would ring hollow. Together, the right to refuse treatment and the right to information required to do so constitute a right to informed consent.

*Knight v. Grossman*, 942 F.3d 336, 342 (7th Cir. 2019).

The right to informed consent is separate and distinct from Eighth Amendment claims as "a physician can be deliberately indifferent to a prisoner's right to refuse treatment without being deliberately indifferent to his medical needs." *Id*. at 343. To establish such a claim, a plaintiff must prove that "(1) he was deprived of information that a reasonable patient would deem necessary to make an informed decision about his medical treatment, (2) the defendant acted with deliberate indifference to the prisoner's right to refuse treatment, and (3) if the prisoner had

6

received the information, he would have refused the treatment." If the plaintiff successfully establishes these three elements, the courts are to balance the right to informed consent against the relevant state interests. *Id*. at 343. Plaintiff has pled enough to proceed as to the claim that Defendant Hansen did not obtain his informed consent before prescribing the Keppra.

Plaintiff's claims against Defendants Aagre and Kennedy for not responding to his grievances fail to state a claim. Section 1983 limits liability to public employees "for their own misdeeds, and not for anyone else's." *Burks v. Raemisch,* 555 F.3d 592, 595–96 (7th Cir.2009). Furthermore, "[s]imply receiving correspondence from a prisoner" does not make a prison official liable for the alleged infraction. *Norington v. Daniels,* No. 11-282, 2011 WL 5101943, at *2–3 (N.D. Ind. Oct. 25, 2011). *See also, Diaz v. McBride*, 1994 WL 750707, at *4 (N.D. Ind. Nov. 30,1994) (a plaintiff cannot establish personal involvement and subject a prison official to liability under section 1983, merely by sending the official various letters or grievances complaining about the actions or conduct of subordinates.) Defendants Aagre and Kennedy are DISMISSED.

**IT IS THEREFORE ORDERED:**

1. This case shall proceed on the claims that Defendants Hansen, Rice, Lashawan, Bautista, Nurse Sherry, Nurse Chris, Nurse Corn and a Jane Doe CMT were deliberately indifferent to Plaintiff's serious medical needs in relation to the Keppra medication, and that Defendants Hansen and Rice were also deliberately indifferent as to Plaintiff's sciatica. Plaintiff will also proceed on the claim that Defendant Hansen violated his Fourteenth Amendment right to informed consent. The Jane Doe CMT is to be added as a Defendant as to the Keppra deliberate indifference claim. Former IDOC Director Baldwin and Wexford Health Sources are DISMISSED. Defendants Aagre and Kennedy are also DISMISSED. Any claims not identified

will not be included in the case, except in the Court's discretion upon motion by a party for good cause shown, or by leave of court pursuant to Federal Rule of Civil Procedure 15.

  2. Plaintiff filed [3], requesting an extension in which to pay the filing fee and, in the interim, paid the filing fee in full. [3] is rendered MOOT. Plaintiff filed [5], requesting information or a list of attorneys willing to act as pro bono counsel. The Court advises that neither it nor the Clerk maintains such a list. [5] is GRANTED to that extent. Plaintiff's motion for status [6] is rendered MOOT by this order.

  3. The Clerk is directed to send to each Defendant, pursuant to this District's internal procedures: 1) a Notice of Lawsuit and Request for Waiver of Service; 2) a Waiver of Service; 3) a copy of the Complaint; and 4) a copy of this Order.

  4. If a Defendant fails to sign and return a Waiver of Service to the Clerk within 30 days after the Waiver is sent, the Court will take appropriate steps to effect formal service on that Defendant and will require that Defendant pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2). If a Defendant no longer works at the address provided by Plaintiff, the entity for which Defendant worked at the time identified in the Complaint shall provide to the Clerk Defendant's current work address, or, if not known, Defendant's forwarding address. This information will be used only for purposes of effecting service. Documentation of forwarding addresses will be maintained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

  5. Defendants shall file an answer within the prescribed by Local Rule. A Motion to Dismiss is not an answer. The answer it to include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings are to address the issues and claims identified in this Order.

6. Plaintiff shall serve upon any Defendant who has been served, but who is not represented by counsel, a copy of every filing submitted by Plaintiff for consideration by the Court and shall also file a certificate of service stating the date on which the copy was mailed. Any paper received by a District Judge or Magistrate Judge that has not been filed with the Clerk or that fails to include a required certificate of service will be stricken by the Court.

7. Once counsel has appeared for a Defendant, Plaintiff need not send copies of filings to that Defendant or to that Defendant's counsel. Instead, the Clerk will file Plaintiff's document electronically and send notice of electronic filing to defense counsel. The notice of electronic filing shall constitute notice to Defendant pursuant to Local Rule 5.3. If electronic service on Defendants is not available, Plaintiff will be notified and instructed accordingly.

8. Counsel for Defendants is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Counsel for Defendants shall arrange the time for the depositions.

9. Plaintiff shall immediately notice the Court of any change in mailing address or phone number. The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.

**IT IS FURTHER ORDERED THAT THE CLERK IS DIRECTED TO**:

1) ATTEMPT SERVICE ON DEFENDANTS PURSUANT TO THE STANDARD PROCEDURES; AND,

2) SET AN INTERNAL COURT DEADLINE 60 DAYS FROM THE ENTRY OF THIS ORDER FOR THE COURT TO CHECK ON THE STATUS OF SERVICE AND ENTER SCHEDULING DEADLINES.

LASTLY, IT IS ORDERED THAT IF A DEFENDANT FAILS TO SIGN AND RETURN A WAIVER OF SERVICE TO THE CLERK WITHIN 30 DAYS AFTER THE

WAIVER IS SENT, THE COURT WILL TAKE APPROPRIATE STEPS TO EFFECT FORMAL SERVICE THROUGH THE U.S. MARSHAL'S SERVICE ON THAT DEFENDANT AND WILL REQUIRE THAT DEFENDANT TO PAY THE FULL COSTS OF FORMAL SERVICE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(d)(2).


 4/30/2020                                              s/Joe Billy McDade
ENTERED                                         JOE BILLY McDADE
                                                UNITED STATES DISTRICT JUDGE